United States District Court
For the Northern District of California

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| PALMTREE ACQUISITION CORPORATION, a Delaware corporation<br><br>         Plaintiff,<br><br>  v.<br><br>MICHAEL R. NEELY, an individual, et al.<br><br>         Defendants,<br>_____/<br><br>THE KIRRBERG CORPORATION, formerly known as MULTIMATIC CORPORATION, a New Jersey Corporation; and STARK INVESTMENT COMPANY, L.P., a California limited partnership,<br><br>         Third-Party Plaintiffs,<br><br>  v.<br><br>MELINDA ELLIS EVERS, Successor Trustee of the Harold A. Ellis, Jr. Revocable Inter Vivos Trust Dated July 13, 2000, et al.<br><br>         Third-Party Defendants,<br>_____/ | No. C 08-3168 MHP<br><br>**MEMORANDUM & ORDER**<br><br>**Re: Motion to Dismiss Third-Party Complaint against Melinda Ellis Evers, Successor Trustee of the Harold A. Ellis, Jr. Revocable Inter Vivos Trust Dated July 13, 2000** |

Defendants/third-party plaintiffs The Kirrberg Corporation and Stark Investment Company filed a third-party complaint for CERCLA contribution, declaratory relief and equitable indemnity against Melinda Ellis Evers ("Trustee Evers"), Successor Trustee of the Harold A. Ellis, Jr. Revocable Inter Vivos Trust Dated July 13, 2000 ("Revocable Family Trust") as well as several other third-party defendants. Now before the court is Trustee Evers's motion to dismiss the First

Amended Third-Party Complaint ("FATC"), in which she argues that third-party plaintiffs' claims are untimely, that Harold A. Ellis, Jr. was not personally liable under CERCLA prior to his death, and that the Revocable Family Trust is not a "covered person" under CERCLA, regardless of Ellis's liability. Having considered the arguments of the parties and for the reasons stated below, the court enters the following memorandum and order.

BACKGROUND

This action concerns the allocation of costs to remediate perchloroethene ("PCE") contamination in the soil and groundwater in the vicinity of the Livermore Arcade Shopping Center ("LASC") and Millers Outpost Shopping Center ("MOSC") in Livermore, California. The parties include present and former owners of LASC and MOSC, the operators of the dry cleaning businesses alleged to have released a significant quantity of PCE, the manufacturer of the equipment used by the dry cleaning businesses, and several related individuals.

Defendant Grubb & Ellis Realty Income Trust, Liquidating Trust ("GERIT") owned and operated LASC from 1989 through 1996. Docket No. 1 (Compl.) ¶ 13 (incorporated by reference into FATC ¶ 1). On February 2, 1993, GERIT brought an action under CERCLA related to the PCE contamination against many of the parties to the present action, including third-party plaintiffs. Docket No. 64 (FATC) ¶ 14. On or about February 7, 1994, the parties to the earlier action entered into a settlement agreement. *Id*. ¶ 16. Paragraph 9 of the settlement agreement contained a "Re-opener" clause, which provided that "actions by governmental agencies requiring cleanup of PCE contamination . . . of the deeper aquifer as defined in Paragraph 5 of the SCO [Site Cleanup Order] . . ." were excepted from the releases otherwise contained in the settlement. *Id*. ¶ 16; Compl. ¶ 21. As part of the 1994 settlement, the settling parties appointed Ellis Partners, Inc. ("EPI") as the Project Manager to oversee the remediation efforts. FATC ¶ 17. GERIT had previously appointed EPI as its Liquidating Agent. *Id*. ¶ 18. Harold A. Ellis, Jr. was a co-trustee of GERIT and a managing partner of EPI. *Id*. ¶¶ 17-18.

Groundwater extraction and treatment commenced in the first quarter of 1995 and was completed in February 1996. Compl. ¶ 19. It was at that time determined that the initial cleanup goal was not technically feasible, and EPI proposed the establishment of a Containment Zone. *Id.*; FATC ¶ 19. In April 1996, the San Francisco Water Quality Control Board ("RWQCB") issued an order, Order No. 96-052, establishing the Containment Zone. FATC ¶ 19; Compl. Exh. 2. The order also required further groundwater monitoring and set trigger levels of PCE for outside the Containment Zone, which could prompt further investigation and/or remediation. *Id.* In April 1996, the RWQCB sent GERIT a letter stating that "no further action related to the PCE pollution site is required, provided the site remains in compliance with Order No. 96-052[.]" FATC ¶ 21; Docket No. 66, Exh. D. GERIT's 10-Q for September 30, 1997, which was signed by Harold A. Ellis, Jr., reported that GERIT had received a No Further Action Letter from the RWQCB indicating that clean-up requirements had been satisfied and that a monitoring program was required for a period of approximately 24 months. FATC ¶ 20; Docket No. 66, Exh. C at 7. GERIT sold LASC to third-party defendants The Anderson Marital Trust and Anderson Tax Deferral Trust in 1996, and in December 1997, GERIT's assets were distributed in their entirety. FATC ¶ 12-13, 22 & Docket No. 66, Exh. C at 6, 9.

On or about March 17, 2008, the RWQCB informed the parties subject to Order No. 96-052 that the Containment Zone had been breached and ordered a technical report to address the presence of PCE in the deeper aquifer. FATC ¶ 23; Compl. ¶ 20 & Exh. 1. This RWQCB letter triggered the Re-opener provision of the 1994 settlement agreement. Compl. ¶ 22. After informal negotiations among the settling parties failed, on July 1, 2008 plaintiff Palmtree Acquisition Corporation brought this action to recover cleanup costs and damages under CERCLA. *Id.*

Harold A. Ellis, Jr. passed away on January 6, 2009. FATC ¶ 7. On January 5, 2010, third-party plaintiffs filed the Third-Party Complaint, naming the "Estate of Harold A. Ellis, Jr." as a third-party defendant. Docket No. 26. On March 12, 2010, the Estate filed a motion to dismiss, contending that the Estate was not a proper party and that Ellis had no personal liability under CERCLA. Docket No. 36. The parties stipulated for leave to file the FATC, Docket No. 63, which

3

was filed on May 24, 2010. The FATC replaced the Estate with "Melinda Ellis Evers, Successor Trustee of the Harold A. Ellis, Jr. Revocable Inter Vivos Trust Dated July 13, 2003" as third-party defendant. FATC ¶ 7. No probate was ever opened, and third-party plaintiffs allege that they never received a notice of administration or creditor's claim. Opp. at 4. All of Ellis's assets were instead held in trust. *Id*. at 5.

LEGAL STANDARD

Pursuant to Federal Rule of Civil Procedure 12(b)(6), a complaint may be dismissed against a defendant for failure to state a claim upon which relief can be granted against that defendant. A motion to dismiss under Rule 12(b)(6) "tests the legal sufficiency of a claim." *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001). Dismissal may be based on the lack of a cognizable legal theory or the absence of sufficient facts alleged under a cognizable legal theory. *Balistreri v. Pacifica Police Dept*., 901 F.2d 696, 699 (9th Cir. 1988). A motion to dismiss should be granted if a plaintiff fails to plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 569 (2007). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Ashcroft v. Iqbal*, --- U.S. ----, ----, 129 S.Ct. 1937, 1949 (2009) (quoting *Twombly*, 550 U.S. at 556).

Allegations of material fact are taken as true and construed in the light most favorable to the non-moving party. *Cahill v. Liberty Mut. Ins. Co.*, 80 F.3d 336, 337-38 (9th Cir. 1996). The court need not, however, accept as true pleadings that are no more than legal conclusions or the "formulaic recitation of the elements" of a cause of action. *Iqbal*, 129 S.Ct. at 1950; *see also Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir. 2001); *Clegg v. Cult Awareness Network*, 18 F.3d 752, 754-55 (9th Cir. 1994). "Determining whether a complaint states a plausible claim for relief ... [is] a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal*, 129 S.Ct. at 1950.

4

DISCUSSION

I.      Statute of Limitations/Federal Rule of Civil Procedure 15(c)(3)

Under California Code of Civil Procedure Section 366.2(a), a claim arising from the liability of a decedent must be filed within one year of the date of death.[1]  Ellis died on January 6, 2009, and third-party plaintiffs first named Trustee Evers as a third-party defendant on May 24, 2010.  The claims against Trustee Evers therefore are untimely unless those claims "relate back" to the claims filed against the "Estate of Harold A. Ellis, Jr" on January 5, 2010.  *See* Fed. R. Civ. P. 15(c); *G.F. Co. v. Pan Ocean Shipping Co., Ltd.*, 23 F.3d 1498, 1501 (9th Cir. 1994) ("Federal Rule of Civil Procedure 15(c) is the only vehicle through which a plaintiff may amend his complaint, after a statute of limitation period has run, to accurately name a defendant who was not correctly named in the pleading before the limitation period had run." (internal citations and quotation marks omitted)).

Under Rule 15(c)(1), a claim asserted in an amended pleading relates back to the date of an earlier pleading if: (1) the claim arises out of the "conduct, transaction or occurrence" set forth in the original pleading, (2) within the time period for service of the summons and complaint, the party to be brought in "received such notice of the action that it will not be prejudiced in defending on the merits," and (3) the party being brought in "knew or should have known that the action would have been brought against it, but for a mistake concerning the proper party's identity."  Fed. R. Civ. P. 15(c)(1)(C).

Under the first factor, the same "conduct, transaction or occurrence" serves as the basis for the original and amended pleadings.   The claims against the Ellis Estate and Trustee Evers both arise out of Ellis's role as co-trustee of GERIT and his alleged personal liability for the PCE cleanup efforts at LASC and MOSC.

Under the second factor, Trustee Evers received sufficient notice of the original third-party complaint, so as not to be prejudiced by having to defend against the FATC.  "Informal notice is sufficient if it allows the defendant the opportunity to prepare a defense."  *Abels v. JBC Legal Grp., P.C.*, 229 F.R.D. 152, 158 (N.D. Cal. 2005) (Ware, J.) (citing *Craig v. United States*, 479 F.2d 35, 36 (9th Cir. 1973)).  "Notice can be imputed if there is sufficient agency or 'community of interest'

5

between the defendant served and the new defendant." *Id.* (quoting *Pan Ocean*, 23 F.3d at 1501). The original Third-Party Complaint sought to recover damages from Ellis's beneficiaries and named the Ellis Estate as a third-party defendant. The Third-Party Complaint was served on Marian L. Ellis, Harold Ellis's spouse and Trustee Evers's stepmother. Moreover, the same law firm that represented GERIT in the main action also represented the Estate in response to the original Third-Party Complaint and now represents Trustee Evers in response to the FATC. Trustee Evers does not seriously dispute that she received sufficient notice to adequately defend this action, and there appears to be sufficient "community of interest" between the Estate and the Revocable Family Trust to impute such notice to Trustee Evers.

Trustee Evers argues, however, that the amended pleading does not satisfy the third Rule 15(c)(1) factor. This factor requires third-party plaintiffs to show that (1) "[they] made a mistake of identity in failing to sue [Trustee Evers] when [they] sued [the Ellis Estate], and (2) Trustee Evers "knew or should have known by the time the limitations period expired . . . that [third-party plaintiffs] had made the mistake." *Louisiana-Pacific Corp. v. ASARCO, Inc.*, 5 F.3d 431, 434 (9th Cir. 1993). "A deliberate choice between potential defendants" is not a "mistake" for purposes of Rule 15(c). *Rendall-Speranza v. Nassim*, 107 F.3d 913, 917-18 (D.C. Cir. 1997). "A potential defendant who has not been named in a lawsuit by the time the statute of limitations has run is entitled to repose—unless it is or should be apparent to that person that he is the beneficiary of the mere slip of the pen." *Id*.

Relying primarily on the Ninth Circuit's decision in *ASARCO*, Trustee Evers argues that initially naming the Ellis Estate as a third-party defendant in lieu of Evers and the Revocable Family Trust was not a "mistake concerning the proper party" but rather a "deliberate choice" to sue the trust once it learned additional facts about the assets it held. Opp. at 5. In *ASARCO*, a defendant liable for cleanup costs under CERCLA sought contribution and indemnification from the entity to which it had sold industrial copper slag. *Id.* at 433. Instead of filing a third-party complaint against IMP, the company that had actually purchased the slag, ASARCO named a different company, L-Bar Products, alleging it to be the successor-in-interest to IMP. *Id.* When L-Bar was deemed not to

6

be IMP's successor-in-interest, ASARCO attempted to assert its third-party claims directly against IMP, even though the applicable two-year statute of limitations had expired. The Ninth Circuit held that ASARCO's amended pleading did not relate back under Rule 15(c), because "[t]here was no mistake of identity, but rather a conscious choice of whom to sue." *Id*. at 434. The court explained that "ASARCO knew IMP was the party for whose actions it sought indemnity," notwithstanding ASARCO's assertion that it thought L-Bar was the successor-in-interest to IMP. *Id*. In this case, accordingly, Trustee Evers argues that third-party plaintiffs deliberately sought to recover costs from the Ellis Estate instead of from the Revocable Family Trust.

The FATC is unlike the amended pleading in *ASARCO* and involves the type of mistake contemplated by Rule 15(c). The "mistake" factor of Rule 15(c) is "expressly intended to preserve legitimate suits" despite mistakes at the pleading stage. *Soto v. Brooklyn Corr. Facility*, 80 F.3d 34, 36 (2d Cir. 1996). Third-party plaintiffs allege that Harold A. Ellis, Jr. was personally liable for the investigation and remediation costs at issue here, and upon his death they reasonably looked to his estate to satisfy some or all of his portion of those costs. It turned out, however, that no probate was ever opened for Ellis and that all of Ellis's personal assets were held in trust. When the Ellis Estate was sued by third-party plaintiffs, the Estate's representatives knew or should have known that the Revocable Family Trust held Ellis's personal assets and that third-party plaintiffs had mistakenly believed that the Estate could be held meaningfully accountable for Ellis's liabilities. *See Bowles v. Reade*, 198 F.3d 752, 758 (9th Cir. 1999) (concluding that amended complaint was not time-barred where "Ms. Reade knew that she was trustee of the Robert B. Reade Trust and not the executrix or administratrix of his estate"); *Abels*, 229 F.R.D. at 158 (finding a mistake of identity where the president of both the initial and subsequently-added entities "did know or should have known that [the subsequently-added entity], as the true owner of the debt, would have been a proper party in the action"); *American High-Income Trust v. Alliedsignal*, 329 F. Supp. 2d 534, 547 (S.D.N.Y. 2004) (concluding that the estate should have known that the plaintiff mistakenly sued decedent himself when it should have sued the estate). The status of Ellis's assets upon his death was uniquely within the knowledge of Trustee Evers and the Estate representatives, and third-party plaintiffs allegedly

7

1 did not become aware of this status until after the statute of limitations had expired. *See Abels*, 229
2 F.R.D. at 158 (describing one pattern of "mistake" in which "the information about the additional
3 defendant's identity is within the defendants' control but the defendants are not forthcoming"). The
4 third Rule 15(c) factor therefore is satisfied.

The court finds that third-party plaintiffs' claims against Trustee Evers are timely.

II. <u>Ellis's Personal Liability Under CERCLA</u>

CERCLA imposes liability upon "any person who at the time of disposal of any hazardous substance owned or operated any facility at which such hazardous substances were disposed of." 42 U.S.C 9607(a)(2). An "owner" is determined by state law at the time of release. *See Am. Int'l Specialty Lines Ins. Co. v. United States*, No. CV 09-01734 AHM , 2010 WL 2635768, at *21 (C.D. Cal. June 30, 2010). In California, legal property owned by a trust is held by the trustee. *See Stoltenberg v. Newman*, 179 Cal. App. 4th 287, 293 (2009). Because LASC was at one time owned by GERIT, Harold A. Ellis, Jr., as co-trustee of GERIT, held legal title to LASC under California law. *See also* FATC ¶ 15 (noting that GERIT's Liquidating Trust Agreement provided that "the whole title to all the Liquidating Trust Estate shall be vested in the Trustees"). The Revocable Family Trust, however, did not have an ownership interest in LASC. In order to reach Ellis's assets held by the Revocable Family Trust, third-party plaintiffs therefore need to establish some basis for holding Ellis accountable for the PCE investigation and remediation costs.

In 1996, Congress amended CERCLA to explicitly protect fiduciaries from personal liability stemming from environmental cleanup costs. *See* Asset Conservation Act, Pub. L. No. 104-208, Div. A., Title II, Subtitle E, § 2502, 110 Stat. 3009, 3009-462 (1996). Section 107 of CERCLA now provides:

> (n) Liability of fiduciaries
>
> (1) In general
>
> The liability of a fiduciary under any provision of this chapter for the release or threatened release of a hazardous substance at, from, or in connection with

8

> a vessel of facility held in a fiduciary capacity shall not exceed the assets held in the fiduciary capacity.

42 U.S.C. § 9607(n)(1). "In general, the amendment limits the liability of fiduciaries to the assets held in a fiduciary capacity. That is, fiduciaries, even those who might otherwise be deemed 'owners' under 107(a), generally cannot be held personally liable under CERCLA." *Canadyne-Georgia Corp. v. Nationsbank, N.A. (South)*, 183 F.3d 1269, 1274 (11th Cir. 1999). A "fiduciary" is specifically defined to include a person acting as a "trustee." 42 U.S.C. § 9607(n)(5)(A)(i)(I).

Third-party plaintiffs nonetheless contend that two exceptions to this fiduciary exemption render Ellis liable in his personal capacity. Although the court notes a relative dearth of case law addressing fiduciary liability under CERCLA, third-party plaintiffs have not plausibly alleged that either exception applies.

Under the first potentially relevant exception, the Asset Conservation Act does not limit fiduciary liability if a person (1) "acts in a capacity other than that of a fiduciary" and (2) "in that capacity, directly or indirectly benefits from a trust or fiduciary relationship." 42 U.S.C. § 9607(n)(7)(A)(i), (ii); *Canadyne-Georgia*, 183 F.3d at 1274 n.9. CERCLA defines "fiduciary capacity" as "the capacity of a person in holding title to a vessel or facility, or otherwise having control of or an interest in the vessel or facility, pursuant to the exercise of responsibilities of the person as a fiduciary." 42 U.S.C. § 9607(n)(5)(B).

Third-party plaintiffs allege that Ellis benefitted from his position as co-trustee of GERIT by selecting EPI—a company he founded and managed— to serve as GERIT's Liquidating Agent and by maneuvering for EPI to serve as project manager for the PCE remediation efforts. Opp. at 8. Although these allegations may be sufficient to show that Ellis benefitted from his fiduciary role for purposes of section 9607(n)(7)(A)(ii), the FATC fails to demonstrate how Ellis "act[ed] in a capacity other than of a fiduciary" for purposes of subsection (A)(i). Even if these alleged activities might be characterized as self-serving, third-party plaintiffs do not show any actions taken by Ellis with respect to the contaminated site that were not pursuant to his responsibilities as co-trustee of GERIT. Ellis's dual role as

9

co-trustee of GERIT and manager of EPI does not necessarily remove Ellis from CERCLA's fiduciary exemption. *See Canadyne-Georgia*, 183 F.3d at 1274 n.9 ("Although Canadyne alleges in its complaint that the Bank's dual role as fiduciary and as the primary lender . . . , by itself, brings the Bank under this exception, we are confident Congress did not intend for the mere existence of a lending relationship to be enough to bring a fiduciary under this exception."). Third-party plaintiffs nowhere allege that Ellis breached his fiduciary duties, and the Liquidating Trust Agreement expressly authorized Ellis to deal with GERIT simultaneously in a fiduciary and non-fiduciary capacity.[2] Docket No. 66 (FATC Exh. A at 12 ¶ 6.3)

Under the second exception proffered by third-party plaintiffs, "if negligence of a fiduciary causes or contributed to the release or threatened release" of hazardous substance, the fiduciary may be personally liable. 42 U.S.C. § 9607(n)(3). According to the Eleventh Circuit, "[t]o gain the benefit of the negligence exception, [third-party plaintiffs] must present evidence that [Ellis] took particular negligent actions that caused or contributed to the release of hazardous substances." *Canadyne-Georgia*, 183 F.3d at 1275. The court further explained that CERCLA imposes no duty to prevent others from releasing hazardous substances, and it held that the defendant "could not have been negligent in failing to prevent others from polluting."

Paragraph 36 of the FATC states, "Harold A. Ellis, Jr. is also personally liable under 42 U.S.C. § 9607(n)(3) for his negligence which caused or contributed to the release or threatened release of PCE." The FATC nowhere alleges any particular actions taken by Ellis that led to the release of PCE, and any failure by Ellis to prevent others' pollution is insufficient to qualify Ellis for the negligence exception. The FATC's bald assertion that Ellis is negligent is precisely the type of legal conclusions or "formulaic recitation of the elements" of a cause of action that is inadequate to survive a motion to dismiss. *Iqbal*, 129 S.Ct. at 1950. Third-party plaintiffs nonetheless argue that this allegation is sufficient, because in *Canadyne-Georgia*, the Eleventh Circuit stated that "a motion to dismiss for

10

1  failure to state a claim should not be granted unless it appears to a certainty that the plaintiff
2  would be entitled to no relief under any state of facts which could be proved in support of his
3  claim." Opp. at 9 (citing *Canadyne-Georgia*, 183 F.3d at 1275-76).  However, the Supreme
4  Court has since made clear that conclusory allegations in a complaint are not entitled to the
5  assumption of truth.  *Iqbal*, 129 S. Ct. at 1951; *see also Lopez v. E Trade Bank*, No. 10-CV-
6  01826-LHK, 2010 WL 3325627, at *5 (N.D. Cal. Aug. 20, 2010) (Koh, J.) (concluding that
7  bare claims of negligence are insufficient to state a claim for relief (citing *Iqbal*, 129 S. Ct at
8  1937)).  The FATC sets forth no theory of negligence under which Ellis might be held
9  personally liable.

10   Because Ellis's involvement in the PCE contamination, investigation and remediation
11  was limited to his role as co-trustee of GERIT, he is not personally liable for recovery costs
12  under CERCLA.  The FATC has not plausibly alleged that any of the exceptions to
13  CERCLA's fiduciary exemption apply, and accordingly third-party plaintiffs have not
14  established that Ellis's personal assets can be reached through the Revocable Family Trust.
15  All of third-party plaintiffs' claims flow from Ellis's CERCLA liability, and the court
16  dismisses the third-party complaint, in its entirety, without prejudice.  In any amended
17  complaint, which shall be filed within thirty (30) days, plaintiff must plead sufficient facts to
18  support personal liability for Ellis.

11

CONCLUSION

For the foregoing reasons, Trustee Evers's motion to dismiss the FATC is GRANTED without prejudice. Third-party plaintiffs may file a Second Amended Third-Party Complaint ("SATC") consistent with this order within thirty (30) days of the filing of this order. Trustee Evers shall file her answer or otherwise respond within thirty (30) days of the filing of the SATC.
.

IT IS SO ORDERED.

Dated: October 4, 2010

MARILYN HALL PATEL
United States District Court Judge
Northern District of California

12

**ENDNOTES**

1. Third-party plaintiffs do not argue that CERCLA's three-year statute of limitations, 42 U.S.C. § 9613(g), preempts the statute of limitations under the California Code of Civil Procedure. Under Federal Rule of Civil Procedure 17(b)(3)(B), Trustee Evers capacity to be sued is determined by California law. *See Louisiana-Pacific Corp. v. ASARCO, Inc.*, 5 F.3d 431, 433-34 (9th Cir. 1993) (holding that Washington law determines the time in which a Washington corporation can be sued under CERCLA).

2. Third-party plaintiffs do not allege that Ellis is liable under CERCLA due to his management role with EPI.