1

2

3

4

5                       UNITED STATES DISTRICT COURT

6                       NORTHERN DISTRICT OF CALIFORNIA

7

8   PALMTREE ACQUISITION                        No. C 08-3168 MHP
    CORPORATION, a Delaware corporation

9              Plaintiff,                        **MEMORANDUM & ORDER**

10     v.                                        **Re: Motion to Dismiss Second Amended
                                                 Third-Party Complaint against Melinda
11  MICHAEL R. NEELY, an individual, et al.      Ellis Evers, Successor Trustee of the Harold
                                                 A. Ellis, Jr. Revocable Inter Vivos Trust
12             Defendants,                        Dated July 13, 2000**
    _____/

13

14  THE KIRRBERG CORPORATION, formerly
    known as MULTIMATIC CORPORATION, a
15  New Jersey Corporation; and STARK
    INVESTMENT COMPANY, L.P., a California
    limited partnership,
16
               Third-Party Plaintiffs,
17
       v.
18
    MELINDA ELLIS EVERS, Successor Trustee
19  of the Harold A. Ellis, Jr. Revocable Inter
    Vivos Trust Dated July 13, 2000, et al.
20
               Third-Party Defendants,
21  _____/

22

23          Defendants/third-party plaintiffs The Kirrberg Corporation and Stark Investment Company

24  filed a third-party complaint for CERCLA contribution, declaratory relief and equitable indemnity

25  against Melinda Ellis Evers ("Trustee Evers"), Successor Trustee of the Harold A. Ellis, Jr.

26  Revocable Inter Vivos Trust Dated July 13, 2000 ("Revocable Family Trust") as well as several

27  other third-party defendants.  Now before the court is Trustee Evers' motion to dismiss the Second

28  Amended Third-Party Complaint ("SATC"), in which she argues that Harold A. Ellis, Jr. was not

United States District Court
For the Northern District of California

1    personally liable under CERCLA prior to his death because as a fiduciary he is protected from

2    liability beyond the assets of the trust.  Having considered the arguments of the parties and for the

3    reasons stated below, the court enters the following memorandum and order.

4

5    BACKGROUND

6          As set forth in the October 4, 2010 Memorandum and Order dismissing the third-party

7    plaintiffs' First Amended Complaint ("FAC"), Docket No. 107, this action concerns the allocation of

8    costs to remediate perchloroethene ("PCE") contamination in the soil and groundwater in the vicinity

9    of the Livermore Arcade Shopping Center ("LASC") and Millers Outpost Shopping Center

10   ("MOSC") in Livermore, California.  The parties include present and former owners of LASC and

11   MOSC, the operators of the dry cleaning businesses alleged to have released a significant quantity of

12   PCE, the manufacturer of the equipment used by the dry cleaning businesses, and several related

13   individuals.

14         Defendant Grubb & Ellis Realty Income Trust, Liquidating Trust ("GERIT") owned and

15   operated LASC from 1989 through 1996.  Docket No. 1 (Compl.) ¶ 13 (incorporated by reference

16   into SATC ¶ 1).  On February 2, 1993, GERIT brought an action under CERCLA related to the PCE

17   contamination against many of the parties to the present action, including third-party plaintiffs.

18   Docket No. 110 (SATC) ¶ 18.  On or about February 7, 1994, the parties to the earlier action entered

19   into a settlement agreement.  *Id.* ¶ 20.  Paragraph 9 of the settlement agreement contained a "Re-

20   opener" clause, which provided that "actions by governmental agencies requiring cleanup of PCE

21   contamination. . . of the deeper aquifer as defined in Paragraph 5 of the SCO [Site Cleanup

22   Order]. . ." were excepted from the releases otherwise contained in the settlement.  *Id.* ¶¶ 20-21.  As

23   part of the 1994 settlement, the settling parties appointed Ellis Partners, Inc. ("EPI") as the Project

24   Manager to oversee the remediation efforts.  SATC ¶ 22.  GERIT had previously appointed EPI as its

25   Liquidating Agent.  *Id.* ¶ 19.  Harold A. Ellis, Jr. was a co-trustee of GERIT and a managing partner

26   of EPI.  *Id.* ¶¶ 12, 19.

27

28

2

After the remediation commenced, in April 1996 the San Francisco Bay Regional Water Quality Control Board ("RWQCB") issued an order, Order No. 96-052, establishing a Containment Zone. SATC ¶ 29; Compl. Exh. 2. The order also required further groundwater monitoring and set trigger levels of PCE for outside the Containment Zone, which could prompt further investigation and/or remediation. *Id.* In April 1996, the RWQCB sent GERIT a letter stating that "no further action related to the PCE pollution site is required, provided the site remains in compliance with Order No. 96-052[.]" SATC ¶ 32; Docket No. 66, Exh. D. GERIT's 10-Q for September 30, 1997, which was signed by Harold A. Ellis, Jr., reported that GERIT had received a No Further Action Letter from the RWQCB indicating that clean-up requirements had been satisfied and that a monitoring program was required for a period of approximately 24 months. SATC ¶ 33; Docket No. 66, Exh. C at 7. GERIT sold LASC to third-party defendants The Anderson Marital Trust and Anderson Tax Deferral Trust in 1996, and in December 1997, GERIT's assets were distributed in their entirety. SATC ¶ 35-37 & Docket No. 66, Exh. C at 6, 9.

On or about March 17, 2008, the RWQCB informed the parties subject to Order No. 96-052 that the Containment Zone had been breached and ordered a technical report to address the presence of PCE in the deeper aquifer. SATC ¶ 38 & Exh. 1. This RWQCB letter triggered the Re-opener provision of the 1994 settlement agreement. *Id.* After informal negotiations among the settling parties failed, on July 1, 2008 plaintiff Palmtree Acquisition Corporation brought this action to recover cleanup costs and damages under CERCLA. Compl. ¶ 22.

Harold A. Ellis, Jr. passed away on January 6, 2009. SATC ¶ 7. On January 5, 2010, third-party plaintiffs filed the Third-Party Complaint, naming the "Estate of Harold A. Ellis, Jr." as a third-party defendant. Docket No. 26 (Compl.). On March 12, 2010, the Estate filed a motion to dismiss, contending that the Estate was not a proper party and that Ellis had no personal liability under CERCLA. Docket No. 36 (Mot.). The parties stipulated for leave to file the First Amended Third-Party Complaint ("FATC"), Docket No. 63, which was filed on May 24, 2010. The FATC replaced the Estate with "Melinda Ellis Evers, Successor Trustee of the Harold A. Ellis, Jr. Revocable Inter Vivos Trust Dated July 13, 2003" as third-party defendant. FATC ¶ 7. No probate was ever opened,

3

1   and third-party plaintiffs allege that they never received a notice of administration or creditor's

2   claim.  Opp. at 4.  All of Ellis's assets were instead held in trust.  *Id.* at 5.

3          On October 4, 2010, the FATC was dismissed without prejudice, Docket No. 107.  This court

4   determined that the FATC set forth no theory or set of facts under which Ellis could be held

5   personally liable for recovery costs for CERCLA violations, and thus granted trustee Evers' motion

6   to dismiss under Federal Rule of Civil Procedure 12(b)(6).  Specifically, this court held that: (1) the

7   FATC was timely under Federal Rule of Civil Procedure 15(c)(3) because the claims against Trustee

8   Evers "related back" to those claims originally filed against the "Estate of Harold A. Ellis, Jr.;" (2)

9   the FATC failed to demonstrate how Ellis acted in a capacity other than that of a fiduciary that would

10  give rise to personal liability for a CERCLA violation; (3) the FATC failed to allege particular

11  actions by Ellis that negligently contributed to the release of PCE that would give rise to fiduciary

12  CERCLA liability.  Third-party plaintiffs timely filed their Second Amended Third-Party Complaint

13  ("SATC") on October 27, 2010, Docket No. 110, and Trustee Evers filed the instant motion to

14  dismiss for failure to state a claim on November 24, 2010, Docket No. 112.

15

16  LEGAL STANDARD

17         Pursuant to Federal Rule of Civil Procedure 12(b)(6), a complaint may be dismissed against a

18  defendant for failure to state a claim upon which relief can be granted against that defendant.  A

19  motion to dismiss under Rule 12(b)(6) "tests the legal sufficiency of a claim."  *Navarro v. Block*, 250

20  F.3d 729, 732 (9th Cir. 2001).  Dismissal may be based on the lack of a cognizable legal theory or

21  the absence of sufficient facts alleged under a cognizable legal theory.  *Balistreri v. Pacifica Police*

22  *Dept.*, 901 F.2d 696, 699 (9th Cir. 1988).  A motion to dismiss should be granted if a plaintiff fails to

23  plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*,

24  550 U.S. 544, 569 (2007).  "The plausibility standard is not akin to a 'probability requirement,' but it

25  asks for more than a sheer possibility that a defendant has acted unlawfully." *Ashcroft v. Iqbal*, ---

26  U.S. ----, ----, 129 S.Ct. 1937, 1949 (2009) (quoting *Twombly*, 550 U.S. at 556).

27

28

4

1    Allegations of material fact are taken as true and construed in the light most favorable to the

2    non-moving party. *Cahill v. Liberty Mut. Ins. Co.*, 80 F.3d 336, 337-38 (9th Cir. 1996). The court

3    need not, however, accept as true pleadings that are no more than legal conclusions or the "formulaic

4    recitation of the elements" of a cause of action. *Iqbal*, 129 S.Ct. at 1950; *see also Sprewell v. Golden*

5    *State Warriors*, 266 F.3d 979, 988 (9th Cir. 2001); *Clegg v. Cult Awareness Network*, 18 F.3d 752,

6    754-55 (9th Cir. 1994). "Determining whether a complaint states a plausible claim for relief. . . [is] a

7    context-specific task that requires the reviewing court to draw on its judicial experience and common

8    sense." *Iqbal*, 129 S.Ct. at 1950.

9

10   DISCUSSION

11   I.    Ellis' Personal Liability Under CERCLA

12       CERCLA imposes liability upon "any person who at the time of disposal of any hazardous

13   substance owned or operated any facility at which such hazardous substances were disposed of." 42

14   U.S.C. 9607(a)(2). An "owner" is determined by state law at the time of release. *See Am. Int'l*

15   *Specialty Lines Ins. Co. v. United States*, No. CV 09-01734 AHM, 2010 WL 2635768, at *21 (C.D.

16   Cal. June 30, 2010). In California, legal property owned by a trust is held by the trustee. *See*

17   *Stoltenberg v. Newman*, 179 Cal. App. 4th 287, 293 (2009). Because LASC was at one time owned

18   by GERIT, Harold A. Ellis, Jr., as co-trustee of GERIT, held legal title to LASC under California

19   law. *See also* SATC ¶ 12 (noting that GERIT's Liquidating Trust Agreement provided that "the

20   whole title to all the Liquidating Trust Estate shall be vested in the Trustees"). The Revocable

21   Family Trust, however, never had an ownership interest in LASC. In order to reach Ellis' assets held

22   by the Revocable Family Trust, third-party plaintiffs therefore need to establish some basis for

23   holding Ellis personally liable for the PCE investigation and remediation costs.

24       In 1996, Congress amended CERCLA to explicitly protect fiduciaries from personal liability

25   stemming from environmental cleanup costs. *See* Asset Conservation Act, Pub. L. No. 104-208,

26   Div. A., Title II, Subtitle E, § 2502, 110 Stat. 3009, 3009-462 (1996). Section 107 of CERCLA now

27

28

5

United States District Court
For the Northern District of California

provides:

> (n) Liability of fiduciaries
>
>> (1) In general
>>
>>> The liability of a fiduciary under any provision of this chapter for the release or threatened release of a hazardous substance at, from, or in connection with a vessel of facility held in a fiduciary capacity shall not exceed the assets held in the fiduciary capacity.

42 U.S.C. § 9607(n)(1). "In general, the amendment limits the liability of fiduciaries to the assets held in a fiduciary capacity. That is, fiduciaries, even those who might otherwise be deemed 'owners' under 107(a), generally cannot be held personally liable under CERCLA." *Canadyne-Georgia Corp. v. Nationsbank, N.A. (South)*, 183 F.3d 1269, 1274 (11th Cir. 1999). A "fiduciary" is specifically defined to include a person acting as a "trustee." 42 U.S.C. § 9607(n)(5)(A)(i)(I). Ellis was a trustee who owned trust property, and the Asset Conservation Act therefore protects him from personal liability for CERCLA violation costs even though he might otherwise be deemed an owner. In order for Ellis to be held personally liable for environmental cleanup costs, he must fall into a statutory exception to the fiduciary exemption from personal liability.

Third-party plaintiffs allege no action by Ellis that would create liability under CERCLA independent of his role as an owner and trustee of a contaminated site. They contend, however, that two exceptions to the fiduciary exemption render Ellis liable in his personal capacity. Although the court notes a relative dearth of case law addressing fiduciary liability under CERCLA, third-party plaintiffs have not plausibly alleged that either exception applies.

II.    Fiduciary Acting in a Capacity Other than a Fiduciary Exception

Under the first potentially relevant exception, the Asset Conservation Act does not limit fiduciary liability if a person (1) "acts in a capacity other than that of a fiduciary" and (2) "in that capacity, directly or indirectly benefits from a trust or fiduciary relationship." 42 U.S.C. § 9607(n)(7)(A)(i), (ii); *Canadyne-Georgia*, 183 F.3d at 1274 n.9. CERCLA defines

6

1   "fiduciary capacity" as "the capacity of a person in holding title to a vessel or facility, or

2   otherwise having control of or an interest in the vessel or facility, pursuant to the exercise of

3   responsibilities of the person as a fiduciary." 42 U.S.C. § 9607(n)(5)(B).

4          Third-party plaintiffs have amended their complaint to allege that Ellis acted outside

5   his fiduciary capacity in two ways: by acting as the chairman of EPI, and by engaging in

6   conduct that breached his fiduciary duty to the GERIT beneficiaries. The SATC contends

7   that Ellis benefitted from his position as co-trustee of GERIT by selecting EPI—a company

8   he founded and managed—to serve as GERIT's Liquidating Agent and by maneuvering for

9   EPI to serve as project manager for the PCE remediation efforts. SATC ¶¶ 47-50; Opp. at 6.

10  Although these allegations may be sufficient to show that Ellis benefitted from his fiduciary

11  role for purposes of section 9607(n)(7)(A)(ii), the SATC fails to demonstrate how Ellis

12  "act[ed] in a capacity other than of a fiduciary" for purposes of subsection (A)(i). Even if

13  these alleged activities might be characterized as self-serving, third-party plaintiffs do not

14  show any actions taken by Ellis with respect to the contaminated site that were not pursuant

15  to his responsibilities as co-trustee of GERIT.[1]

16         Ellis is not automatically liable through this exception merely by virtue of serving in a

17  dual role as co-trustee of GERIT and chairman of EPI. *See Canadyne-Georgia*, 183 F.3d at

18  1274 n.9 ("Although Canadyne alleges in its complaint that the Bank's dual role as fiduciary

19  and as the primary lender . . . , by itself, brings the Bank under this exception, we are

20  confident Congress did not intend for the mere existence of a lending relationship to be

21  enough to bring a fiduciary under this exception."). Similarly, the mere existence of the

22  liquidating agent relationship between GERIT and EPI is not enough to bring Ellis under the

23  section 9607(n)(7)(A) exception. Third-party plaintiffs allege no set of facts indicating that

24  Ellis' acts as chairman of EPI were nothing but consistent with, if not in furtherance of, his

25  fiduciary duty to GERIT. Serving the trust in a dual capacity is not enough to show that he

26  was acting outside his fiduciary capacity in such a way as to impose personal liability under

27  CERCLA.

28

United States District Court
For the Northern District of California

Third-party plaintiffs also amended their complaint to allege that Ellis acted in a capacity other than that of a fiduciary by breaching his fiduciary duties to GERIT. While they contend that Ellis breached his fiduciary duty by: (1) distributing the trust proceeds to the beneficiaries in 1997, SATC ¶ 37; (2) failing to "restore" or "reserve" any assets of the trust to pay for response costs the RWQCB required in 2008, SATC ¶¶ 49, 53; and (3) by making a "knowing[] and intentional[] misrepresentation to the SEC" regarding the status of the Site, SATC ¶ 48, these facts do not constitute a breach of fiduciary duty as a matter of law. A fiduciary is under a duty to "act for the benefit of another person on all matters within the scope of their relationship," *see* BLACK'S LAW DICTIONARY (West 2009), and Ellis was under a further contractual duty to make timely distributions of the trust proceeds to the beneficiaries (Trust Agreement, Exh. A to SATC § 5.2). Any wrongdoing by Ellis that third-party plaintiffs have alleged is to the detriment of GERIT's ostensible creditors, not to its beneficiaries; no facts demonstrate acts constituting a potential breach of fiduciary duty.

The SATC alleges that Ellis breached his fiduciary duty to GERIT beneficiaries by distributing the trust proceeds and terminating the trust "because not all of GERIT's obligations had been discharged." SATC ¶ 37. They further contend that Ellis breached his fiduciary duty when he failed to reserve money in the trust for future liabilities and, once the re-opener provision of the settlement agreement was triggered, when he failed to "restore the improper distributions to the beneficiaries." SATC ¶ 49. Neither of these allegations are sufficient to plausibly suggest that Ellis breached his fiduciary duty to GERIT. The actions of a trustee are presumed to be in good faith, and the burden is on the party challenging the action to show otherwise. *Young v. McCoy*, 147 Cal. App. 4th 1078, 1087. Under the provisions of the trust agreement, the trustees retained discretion in determining how to provide for future liabilities and obligations and when those liabilities had been discharged.[2] (Trust Agreement, Exh. A to SATC §§ 5.4, 5.7). Third-party plaintiffs must therefore allege facts that suggest Ellis used his discretion with respect to administering the trust in a manner that harmed the beneficiaries.

8

United States District Court
For the Northern District of California

1         The facts alleged in the SATC demonstrate that Ellis used his discretion as a trustee to

2    act in ways that benefitted the GERIT beneficiaries and therefore do not constitute a breach

3    of fiduciary duty as a matter of law. On April 29, 1996, the RWQCB finalized Order No. 96-

4    052, stating that the risk of contamination of the deeper aquifer was "negligible" and that

5    "adequate source removal has been accomplished." (Exh. E to SATC at 9). Further, in

6    March 1996, GERIT and third-party plaintiffs had contracted with a consultant company to

7    carry out all activities required to clean up the Site pursuant to Order No. 96-052 for a firm

8    fixed price. (Exh. F to SATC at 2). Ellis therefore had a good faith reason to believe that

9    GERIT's environmental obligations had been paid for and that there was little possibility of

10   future cleanup costs, and was within his duties as a trustee in determining that the trust's

11   liability for the contamination had been discharged.

12        Having determined that the trust's obligations had been discharged, Ellis was under a

13   fiduciary duty, as stated in the Trust Agreement, to distribute the assets of the trust to the

14   beneficiaries "expeditiously." (Trust Agreement, Exh. A to SATC § 5.7). He distributed the

15   proceeds of the sale of the property and terminated GERIT in December 1997, SATC ¶ 37,

16   over a year and a half after the letter from the RWQCB stating that "no further action. . . is

17   required." (April 29, 1996 RWQCB Letter, Exh. G to SATC). Neither Ellis' distribution of

18   the trust assets nor his failure to keep a reserve or restore the trust has resulted in any

19   apparent harm to the beneficiaries of GERIT; indeed, the beneficiaries have only benefitted

20   from receiving and retaining the entirety of the trust proceeds.

21        Further, third-party plaintiffs allege that Ellis breached his fiduciary duty by

22   incorrectly using a "term of art" in an SEC filing when he called Order No. 96-052 a "No

23   Further Action Letter." SATC ¶¶ 33, 34, 48. The SATC claims that this conduct was

24   designed to obtain "intentionally misrepresented environmental clearances" that purportedly

25   helped Ellis rush the sale of the property. SATC ¶ 49. It does not state what "environmental

26   clearances" Ellis fraudulently obtained by incorrectly calling the RWQCB letter a "No

27

28

1  Further Action Letter," nor why such a misrepresentation "also constituted a breach of Ellis'

2  fiduciary duties to GERIT."  SATC ¶¶ 48-49, *see also* Opp. at 7.

3  The documents incorporated by reference to the SATC show that third-party

4  plaintiffs' allegations do not constitute a plausible breach of fiduciary duty by Ellis when he

5  called Order No. 96-052 a "No Further Action Letter."  The letter in fact states that "no

6  further action. . . is required," (April 29, 1996 RWQCB Letter, Exh. G to SATC), and while

7  third-party plaintiffs allege that this "term of art" generally means that a site is closed, Ellis'

8  statement to the SEC in GERIT's 10-Q filing does not qualitatively misrepresent the status of

9  the Site. (Exh. H to SATC).  Even if the "No Further Action Letter" is a "term of art" with a

10  specific meaning, which third-party plaintiffs have failed to establish in the first place, Ellis

11  provided other information in the 10-Q that makes clear he intended no misrepresentation by

12  his use of the term.  Further, third-party plaintiffs have not made clear how such an alleged

13  misrepresentation to the SEC regarding the status of the Site harmed the beneficiaries of

14  GERIT.  For the foregoing reasons, third-party plaintiffs fail to allege that Ellis ever acted in

15  a capacity other than that of a fiduciary and fail to allege facts sufficient to establish the

16  potential for personal liability under 42 U.S.C. § 9607(n)(7)(A).

17  Third-party plaintiffs also ignore the safe harbor provision of 42 U.S.C.

18  § 9607(n)(4)(C), which states that "a fiduciary shall not be liable in its personal capacity

19  under this chapter for. . . terminating the fiduciary relationship."  The SATC alleges that Ellis

20  "positioned GERIT so that he could liquidate and terminate it as quickly as possible,"  SATC

21  ¶ 48, and that he did so in December 1997, SATC ¶ 49.  Further, third-party plaintiffs allege

22  that

23  "Ellis' termination of GERIT was a breach of his fiduciary duties because not
all of GERIT's obligations had been discharged.  Further, Ellis benefitted from

24  this personally because he was no longer saddled with having legal title to a
contaminated property or being trustee of an entity responsible to the RWQCB

25  for ongoing environmental obligations."

26  SATC ¶ 37.  This alleges no more than Ellis terminating the fiduciary relationship, no matter

27  the ostensible reason.  The safe harbor provision, to the extent third-party plaintiffs rely on

28

10

1  Ellis' liquidating the trust as an act in breach of his fiduciary duty, protects Ellis from

2  personal liability.

3

4  III.   Fiduciary Negligence Exception

5       Under the second exception proffered by third-party plaintiffs, "if negligence of a

6  fiduciary causes or contributed to the release or threatened release" of hazardous substances,

7  the fiduciary may be personally liable.  42 U.S.C. § 9607(n)(3).  According to the Eleventh

8  Circuit, "[t]o gain the benefit of the negligence exception, [third-party plaintiffs] must present

9  evidence that [Ellis] took particular negligent actions that caused or contributed to the release

10 of hazardous substances." *Canadyne-Georgia*, 183 F.3d at 1275.  The court further

11 explained that CERCLA imposes no duty to prevent others from releasing hazardous

12 substances, and it held that the defendant "could not have been negligent in failing to prevent

13 others from polluting."

14       Paragraph 51 of the SATC states,

15       "Ellis, through his company, EPI, failed to adequately address the shallow
         groundwater contamination, which led to the migration of the plume outside
16       of the Containment Zone and PCE release and contamination of the deep
         aquifer.  The deep aquifer contamination is a result of the shallow
17       groundwater contamination that was not properly taken care of by EPI
         pursuant to the 1994 settlement."
18
   In order to state a plausible claim for relief, a plaintiff must plead "factual content that allows
19
   the court to draw the reasonable inference that the defendant is liable for the misconduct
20
   alleged." *Iqbal*, 129 S.Ct. at 1949.  While this allegation is indeed more detailed than the
21
   bald statement of liability under section 9607(n)(3) contained in the FATC,[3] it fails to
22
   sufficiently allege that Ellis was negligent as described in that section.
23
24     The SATC states only a conclusory allegation of a failure to act (i.e., "EPI[] failed to

25 adequately address the. . . contamination. . . that was not properly taken care of by EPI"), not

26 "particular negligent actions that caused or contributed to the release of hazardous

27 substances." *See Canadyne-Georgia*, 183 F.3d at 1275.  Further, even if this allegation were

28 sufficiently particular as to affirmative actions contributing to the release of hazardous

United States District Court

For the Northern District of California

United States District Court

For the Northern District of California

1    substances, it fails to allege that Ellis was in any way personally involved in mismanagement

2    of the Site by EPI. The Asset Conservation Act requires the *direct* negligence of a fiduciary

3    that causes or contributes to contamination under CERCLA; vicarious liability or imputed

4    negligence is not enough to impose personal liability on a fiduciary. *See id.,* n.10.

5          "Just because under state partnership law a partnership and its partners may be
6          vicariously liable for the negligence of any one partner or employee of the
           partnership does not mean every partner herself negligently caused the
           accident. 'Vicarious liability,' or 'imputed negligence,' is not the same as
7          saying 'negligence of a fiduciary cause[d] or contribute[d] to the release,' as
           required under the Asset Conservation Act."

8    *Id.* Alleging that the EPI partnership, Ellis among the partners, was negligent in causing or

9    contributing to the release of hazardous substances is not the same as alleging that Ellis was

10    negligent as a fiduciary. Since the SATC fails to allege any individual negligence by Ellis

11    that caused or contributed to the release of hazardous substances, Ellis is not personally liable

12    for the CERCLA recovery costs under section 9607(n)(3).

13       Because Ellis involvement in the PCE contamination, investigation and remediation

14    was limited to his role as co-trustee of GERIT, he is not personally liable for recovery costs

15    under CERCLA. The SATC has not plausibly alleged that any of the exceptions to

16    CERCLA's fiduciary exemption from personal liability apply, and accordingly third-party

17    plaintiffs have not established that Ellis's personal assets can be reached through the

18    Revocable Family Trust. All of third-party plaintiffs' claims flow from Ellis' CERCLA

19    liability, and the court dismisses the third-party complaint, in its entirety, with prejudice.

20

21    <u>CONCLUSION</u>

22       For the foregoing reasons, Trustee Evers' motion to dismiss the SATC is GRANTED with

23    prejudice.

24       IT IS SO ORDERED.

25

26    Dated: February //, 2011

27                               MARILYN HALL PATEL
                                   United States District Court Judge

28

**United States District Court**
For the Northern District of California

1

### ENDNOTES

2   1. Ellis' actions cannot be characterized as directly benefitting him.  Ellis was never a beneficiary of
3   GERIT, and even if he were, such status was specifically permitted under the Trust Agreement.  ("A
    Trustee may be a Beneficiary to the same extent as if he were not a Trustee hereunder.") (Trust
4   Agreement, Exh. A to SATC § 3.4)

5   2. "The Trustees may, in their discretion, make reasonable provision by reserve or otherwise. . . for such
    amount as the Trustees in good faith may reasonably determine to be necessary to meet present or future
6   claims and liabilities of the trust." (Trust Agreement, Exh. A to SATC § 5.4); "If the trustees determine
    that all claims, debts, liabilities, and obligations of the Liquidating Trust have been paid or discharged.
7   . . or if the existence of the Liquidating Trust shall terminate[,]. . . the Trustees shall, as expeditiously
    as is consistent with the conservation and protection of the Liquidating Trust Estate, distribute [the
8   estate] to the Beneficiaries."  (Trust Agreement, Exh. A to SATC § 5.7)

9   3. Paragraph 36 of the FATC states, "Harold A. Ellis, Jr. is also personally liable under 42 U.S.C.
    § 9607(n)(3) for his negligence which caused or contributed to the release or threatened release of PCE."
10  The FATC nowhere alleges any particular actions taken by Ellis that led to the release of PCE.

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28